United States District Court
Southern District of Texas
**ENTERED**
November 16, 2022
Nathan Ochsner, Clerk

THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JUAN CARLOS RAMOS ESPARZA, § § Petitioner, § VS. § VANADIA LISBETH DIAZ NARES, § § Respondent. § § | CIVIL ACTION NO. 4:22-CV-03889 |

### ORDER

Pending before the Court is Plaintiff Juan Carlos Ramos Esparza's ("Petitioner" or "Esparza") Emergency Motion for Issuance of Ex Parte Order. (Doc. No. 3). After consideration of the motion and the arguments presented to the Court, the Court hereby **GRANTS** Plaintiff's Motion. (Doc. No. 3).

### I. Background

Esparza filed his lawsuit under the Convention on the Civil Aspects of International Child Abduction (the "Hague Convention") and its implementing legislation, the International Child Abduction Remedies Act, 22 U.S.C. § 9001 et seq. ("ICARA"). In his Verified Complaint and Petition for the Return of Children to Mexico (the "Verified Complaint") Esparza alleges that Respondent Vanadia Lisbeth Diaz Nares ("Nares" or "Respondent") wrongfully removed their children from Mexico. He claims that the children are currently retained in the United States in violation of Article 3 of the Hague Convention. (Doc. No. 1 at 7).

Esparza has two minor biological children: M.G.R.D. and V.N.R.D (collectively the "Children"). At the time the Children were born (2011 and 2016), he was married to their mother, Nares. Nares and Esparza subsequently divorced in Mexico. As part of their divorce proceeding,

1

the parties agreed to joint legal custody of both Children. (*See* Doc. No. 3, Ex. B). Under the agreement, Esparza was allowed to see and live with his two daughters each Saturday and Wednesday. (Doc. No. 3, Ex. B at 2). Additionally, as outlined in the agreement, each parent was allowed to travel with the Children; however, travel was limited to 15 days per trip and the parties were required to inform one another about the trips. (Doc. No. 3, Ex. B at 3).

As alleged, in May 2022, Nares, without prior notice and in an apparent violation of the terms of their divorce, brought the two Children from Mexico to the United States. (Doc. No. 1 at 2). Following the removal, Esparza initiated legal proceedings in Nuevo Leon, Mexico, claiming that the Children were abducted and seeking to alter the physical custody arrangements. (Doc. No. 1 at 3). Nares filed her own petition in Mexico, contending that Esparza was not providing adequate financial support for the kids. Respondent's Mexican petition apparently claims that she and the Children are residing in Nuevo Leon, Mexico, but Petitioner states that these assertions are false. Instead, Petitioner claims that Respondent and their Children are currently "residing in the home of Respondent's new spouse, Mr. Tejeda Guerrero, in Deer Park, TX." (Doc. No. 1 at 3).

Petitioner filed a Verified Complaint (Doc. No. 1) and an Emergency Motion for Issuance of Ex Parte Order, hoping to secure his Children's return (Doc. 3). In his Motion, Esparza requests relief from this Court in the form of: (1) a temporary restraining order ("TRO") prohibiting the removal of the Children from the jurisdiction of this Court pending final resolution of the allegations contained in the Verified Complaint, (2) directing that the names of the Children be entered into the National Crime Information Center ("NCIC") index, (3) ordering Nares turn over the Children's travel documents to the Court, and (4) any such further relief as justice and its cause may require. (Doc. 3 at 10).

## II. Legal Standard

A party seeking a TRO generally must show, "(1) a substantial likelihood of success on the merits, (2) irreparable injury if the injunction is not granted, (3) that the injury outweighs any harm to the other party, and (4) that granting the injunction will not disserve the public interest." *Brock Servs., L.L.C. v. Rogillio*, 936 F.3d 290, 296 (5th Cir. 2019). When a party seeks an *ex parte* TRO, however, that party must satisfy further requirements. Specifically, Federal Rule of Civil 65(b) provides, "[t]he court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and "(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65.

## III. Analysis

Esparza asks the Court to grant a TRO prohibiting, among other things, Nares from removing the Children from the Court's jurisdiction. The initial inquiry for the Court is whether it has the ability to grant a TRO under the Hague Convention.

The Hague Convention's overall goal is to "address the problem of international child abductions during domestic disputes." *Lozano v. Montoya Alvarez*, 572 U.S. 1, 4 (2014) (internal quotation marks omitted). The Convention achieves its goal by "establish[ing] legal rights and procedures for the prompt return of children who have been wrongfully removed or retained." 22 U.S.C.A. § 9001. The Convention's central goal is the return remedy, which provides that when children under the age of 16 have been wrongfully removed or retained, "the country to which the child has been brought must order the return of the child forthwith, unless certain exceptions apply." *Abbott v. Abbott*, 560 U.S. 1, 9 (2010) (internal quotation marks omitted). A wrongful

3

removal is one that violates "rights of custody." *Id.* The reasoning behind the Hague Convention is that the best interest of a child is well served when decisions regarding custody rights are made in the country of habitual residence. This is clearly Mexico.

Under the Hague Convention, courts "may take or cause to be taken measures under Federal or State law, as appropriate, to protect the well-being of the child involved or to prevent the child's further removal or concealment before the final disposition of the petition." 22 U.S.C.A. § 9004. This includes entering an *ex parte* TRO if the party complies with the above outlined requirements. *See Lopez v. Ash*, No. CV 22-1053, 2022 WL 1207146, at *2 (W.D. La. Apr. 22, 2022) (granting an *ex parte* Temporary Restraining Order under the Hague Convention).

As mentioned, a party moving for a TRO must show "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any harm that may result from the injunction to the non-movant; and (4) that the injunction will not undermine the public interest." *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1051 (5th Cir. 1997). For an *ex parte* TRO, the movant's attorney must also certify in writing any efforts made to give notice and the reasons why notice should not be required. Fed. R. Civ. P. 65.

The Court will analyze each requirement in turn.

### 1. Likelihood of Success on the Merits

To succeed on a claim brought under the Hague Convention, the Petitioner must demonstrate that the Children were wrongfully removed. *Hernandez v. Erazo*, No. SA-22-CV-01069-XR, 2022 WL 12039669, at *3 (W.D. Tex. Oct. 19, 2022). Removal is wrongful if it "is in breach of rights of custody attributed to a person... under the law of the State in which the child was habitually resident immediately before the removal." 22 U.S.C.A. § 9001. Additionally,

4

Petitioner must show that he was fully exercising his custody rights when Respondent removed the Children.

To determine whether Nares removed the Children in breach of the rights of custody, the Court must consider the Children's habitual residence. Unfortunately, the Hague Convention does not provide the Court with a definition of habitual residence. The Fifth Circuit, however, has "adopted an approach that begins with the parents' shared intent or settled purpose regarding their child's residence." *Larbie v. Larbie*, 690 F.3d 295, 310 (5th Cir. 2012). Without shared parental intent, the child's previous habitual residence controls unless the circumstances unequivocally indicate otherwise. *Id.* at 311.

Petitioner explains in his Motion and Verified Complaint that both Children were born in Nuevo Leon, Mexico, and both Children lived there for their entire lives. (Doc. No. 3 at 7). Petitioner and Respondent are citizens of Mexico, and Respondent has resided in Mexico for the majority of the Children's lives. (Doc. No, 1 at 2). While Respondent was allowed to travel with the Children, she needed to inform Petitioner and was not permitted to travel with them for more than 15 days at a time. (Doc. No. 3, Ex. B at 3). Respondent, allegedly, did not follow either of those requirements. For that reason, the Court finds that there was not a shared parental intent to change the Children's habitual residence. Thus, Nuevo Leon, Mexico is the Children's habitual residence under the Hague Convention.

The next question is whether Nares breached of the rights of custody by removing the kids from the country. The signed divorce agreement provides that, "Petitioner and Respondent have joint legal custody of the Children." (Doc. No. 3 at 7). In accordance with the agreement, Petitioner was allowed to see and live with his two daughters each Saturday and Wednesday. (Doc. No. 3, Ex. B at 2). The agreement also contained provisions about traveling with the Children. In relevant

part, the provision provides that each parent "can travel within the country or abroad with any of the [kids] for a maximum period of 15 – fifteen – days." At this point, Respondent has been outside of Mexico with the Children for over five months. Five months clearly exceeds fifteen days. For that reason, Nares breached the rights of custody.

Lastly, Peitioner must show that he was fully exercising his custody rights when the Children were removed. Petitioner states in his Verified Complaint that, "[u]ntil the Children were wrongfully removed from Mexico, Petitioner consistently exercised his legal and physical custody rights with respect to both Children." (Doc. No. 1 at 2). Petitioner further elaborates in his motion that, "[h]e had been exercising his period of coexistence regularly, including the Saturday immediately before the Children's removal, and had been attempting to pick up the Children on the day following their removal when he learned they were no longer in Mexico. (Doc. No. 3 at 7 –8). The Court concludes that Esparza was exercising his custody rights when Respondent removed the Children from Mexico.

From the information presented to the Court, there is a strong likelihood for success on the merits of Petitioner's claim.

## 2. Irreparable Injury

Petitioner must also show that there is a substantial threat or irreparable injury if a TRO is not entered. Esparza contends that if the Court does not enter a TRO, "Petitioner will be required to locate the Children in an effort to secure their return to their country of habitual residence." (Doc. No. 3 at 8). He argues that if Respondent and the kids relocated, it "will only further delay his reunification with them." (Doc. No. 3 at 8). Based on Respondent's actions in removing the Children from Mexico, there is strong likelihood of further movement of the Children absent Court interference. *Lopez v. Ash*, No. CV 22-1053, 2022 WL 1207146, at *3 (W.D. La. Apr. 22, 2022)

(court held that irreparable injury is imminent without Court relief since the parent had the ability to mobilize his children).

The Court agrees that these circumstances constitute irreparable injury warranting injunctive relief under the law. *See Rodriguez v. Escamilla*, No. DR-13-CV-077-AM, 2013 WL 12109029, at *2–3 (W.D. Tex. Oct. 25, 2013) (finding the prospect that a respondent could again relocate a child without consent as sufficient to support the irreparable injury element of as a temporary restraining order in a Hague Convention case).

### 3. Injury Outweighs Any Harm To The Other Party

Petitioner argues that Respondent will not suffer harm from an order granting the requested relief. Rather, "[s]he simply will be prevented from moving the Children out of the jurisdiction and will be required to deposit their passports with the Court." (Doc. No. 3 at 9). Since Respondent currently resides with the Children in the jurisdiction, an order instructing them to remain does not alter the status quo. On the other hand, Petitioner could potentially lose his Children if they are again relocated.

Accordingly, the Court finds that Petitioner has showed that the threatened injury outweighs any harm from the injunction to Respondent. *See Hernandez v. Erazo*, No. SA-22-CV-01069-XR, 2022 WL 12039669 (W.D. Tex. Oct. 19, 2022) (finding that Petitioner's injury outweighed the harm to the Respondent where the TRO was going to preserve the status quo under similar circumstances).

### 4. Granting The TRO Will Not Disserve the Public Interest

Petitioner argues that it is in the public interest to give the Court the opportunity to hear this case. He further argues "the Hague Convention and ICARA expressly authorize the relief sought." (Doc. No. 3 at 9). Since his Verified Complaint and Motion are in compliance and in

7

furtherance of the Hague Convention and ICARA's goals, the Court agrees that granting a TRO is consistent with international, federal, and state law, and will not disserve the public interest.

### 5. Certify in Writing Efforts To Give Notice And The Reason Notice Should Not Be Required.

An *ex parte* TRO also requires the movant's attorney to certify in writing any efforts made to give notice and the reason it should not be required. Fed. R. Civ. P. 65. Petitioner attaches a Rule 65(b)(1)(B) Certification from his attorney. In the certification, Esparza's counsel certifies that she has not attempted to give Nares notice of the Ex Parte Motion and further asserts that notice should not be required because of the possibility that Respondent will remove the Children from the jurisdiction. (Doc. No. 3 at 12). The Court holds that this certification is sufficient for purposes of granting a TRO.

## IV. Conclusion

The Court hereby **GRANTS** Esparza's Emergency Motion for Issuance of Ex Parte Order. (Doc. No. 3). The Court further finds that this *ex parte* Order is granted without notice to Respondent because there is a significant risk that she will leave the jurisdiction of this Court prior to issuance of an order for injunction if she is given prior notice.

The Court further **ORDERS** the following:

- Vanadia Lisbeth Diaz Nares is prohibited from removing the Children, M.G.R.D. and V.N.R.D, from the jurisdiction of this Court pending further order of this Court.

- No person acting in concert or participating with Vanadia Lisbeth Diaz Nares shall take any action to remove the Children, M.G.R.D. and V.N.R.D., from the jurisdiction of this Court pending further order of this Court.

- Within **seven days** of being served with this order, Vanadia Lisbeth Diaz Nares must surrender all of M.G.R.D. and V.N.R.D.'s travel documents, including but not limited

8

to the Children's passport or identification card and birth certificate, be surrendered to this Court.

- The Court will conduct a hearing on this matter on **November 29, 2022,** at **10:00 a.m.** At the hearing, Vanadia Lisbeth Diaz Nares must personally appear with M.G.R.D. and V.N.R.D. and show cause why this temporary restraining order should be ended, as well as why M.G.R.D. and V.N.R.D. should not be returned to Mexico. The Court will consolidate a trial of the case on the merits with the hearing of application for preliminary injunction. *See* Fed. R. Civ. P 65(a); *John v. State of La. (Bd. of Trs. for State Colls. & Univs.)*, 757 F.2d 698, 704 (5th Cir. 1985).

- Petitioner shall have an independent process server serve Vanadia Lisbeth Diaz Nares by hand delivery a copy of this Order, the Verified Complaint, and all other pleadings that Petitioner has filed on Nares no later than **November 21, 2022**.

- Unless extended by the Court, this Order expires on Wednesday, **November 30, 2022**, at **2:00 p.m.**

- No security bond is required at this stage.

Signed at Houston, Texas, this 16th day of November, 2022.

Andrew S. Hanen
United States District Judge