United States District Court
Southern District of Texas

**ENTERED**

December 15, 2022

Nathan Ochsner, Clerk

**THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **JUAN CARLOS RAMOS ESPARZA,** | § | |
| | § | |
| **Petitioner,** | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:22-CV-03889** |
| | § | |
| **VANADIA LISBETH DIAZ NARES,** | § | |
| | § | |
| **Respondent.** | § | |
| | § | |

## ORDER

Pending before this Court is Petitioner Juan Carlos Ramos Esparza's ("Petitioner" or "Esparza") Verified Complaint and Petition for the Return of Children to Mexico ("Verified Complaint"). (Doc. No. 1). Respondent Vanadia Lisbeth Diaz Nares ("Nares" or "Respondent") filed an Original Answer. (Doc. No. 18). After consideration of various motions, the law, the evidence , and the arguments presented to the Court, the Court hereby **ORDERS** the two minor children—M.G.R.D. and V.N.R.D.—be returned to Mexico.

### I. History

*Factual Background*

Petitioner and Respondent are Mexican citizens that got married in Mexico. During their marriage, Esparza and Nares had two children: M.G.R.D. and V.N.R.D (collectively the "Children"). The Children are both Mexican citizens, having been born in Nuevo Leon, Mexico. They have resided there for the majority of their lives.

Unfortunately, in April 2021, Esparza and Nares divorced. As part of their divorce, the parties, while still in Nuevo Leon, entered into a divorce decree, that governs the legal custody arrangement of the Children. (Doc. No. 1, Ex. G). Under the decree, that was agreed to by both sides, the parents maintained joint legal custody of the Children. Pursuant to that decree, Esparza

1

was permitted to see and live with his daughters from 11:00 a.m. to 8:00 p.m. on Saturdays and from 2:00 p.m. to 9:00 p.m. on Wednesdays. (Doc. No. 1, Ex. G at 2). At all other times, the Children remained with Nares.

More importantly, the divorce agreement also specified how the parents were to travel with the Children. (Doc. No. 1, Ex. G at 3). Under that agreement, each parent was allowed to travel with the Children, but travel was limited to 15 days per trip and the parties were required to inform one another about the trips. (Doc. No. 1, Ex. G at 3).

In May 2022, Nares, without permission or prior notice to Esparza, left Nueva Leon and brought the two Children to Texas.[1] The Children have remained in Texas ever since. This is clearly in violation of the custody decree. As it turns out, sometime after the divorce, Respondent married Joel Neftali Tejeda Guerrero ("Tejeda") who resides in Deer Park, Texas. He is also a citizen of Mexico, but has legal permanent resident status in the United States.[2] Respondent hopes to adjust her status and that of the Children. The Children and Nares are currently living in Guerrero's home in Deer Park.

*Procedural Facts*

Following the Children's removal from Mexico, Esparza initiated legal proceedings in Nuevo Leon, Mexico, claiming that the Children were abducted and seeking to alter the physical

---

[1] According to Petitioner's counsel and U.S. Customs and Border Protection documents (Doc. No. 17, Ex. 5) this is the second time that Respondent has taken the kids out of the country. The first time being on October 29, 2021. That time, Respondent voluntarily returned to Mexico with the Children.

[2] Mr. Tejeda has been a source of controversy in the pleadings. Petitioner pointed out that Tejeda is the subject of a Protective Order, prohibiting him from committing family violence. The Court confirmed that such an order does exist. (*See* Doc. No. 1, Ex. J). The District Court of Harris County found "that family violence has occurred and that family violence is likely to occur again in the future." (Doc. No. 1, Ex. J. The Court is unable to access the application or other documents because they are sealed, but based upon an examination of the Protective Order, it does not seem that Nares or the Children were involved in the previous conduct that led to the Restraining Order. (*See* Doc. No. 1, Ex. J) (the case style is "Areli Lissett Arriaga Tejeda v. Joel Neftali Tejeda Guerrero" and the Order specifies that the application was filed by Areli Lissett Arriaga Tejeda.). Further, Petitioner filed a Victim Impact Statement, which detailed threats involving a firearm and stalking, but did not involve the Respondent or the Children. (Doc. No. 17, Ex. E). Respondent objected to this material. While the Court did not strike these pleadings, it ultimately found them to be irrelevant to the immediate question before the Court.

custody arrangements. (Doc. No. 1 at 3). Nares apparently filed her own petition in Mexico, contending that Esparza was not providing adequate financial support for the kids.

Petitioner then filed his Verified Complaint and Petition for the Return of Children to Mexico ("Verified Complaint") in this Court. (Doc. No. 1). He filed his lawsuit under the Convention on the Civil Aspects of International Child Abduction (the "Hague Convention") and its implementing legislation, the International Child Abduction Remedies Act, 22 U.S.C. § 9001 et seq. ("ICARA"). In addition to his Verified Complaint, Petitioner filed an Emergency Motion for Issuance of Ex Parte Order. (Doc. No. 3). The Court granted Petitioner's Ex Parte Temporary Restraining Order ("TRO") and scheduled a hearing to decide whether to grant a preliminary injunction. (Doc. No. 5). At the hearing, the parties agreed to extend the TRO, and the Court reset the hearing to a later date. (*See* Doc. No. 12).

Just before the second hearing took place, both parties filed motions. Petitioner filed a Motion for Judgment on the Pleadings (Doc. No. 14), and Respondent filed a Motion for Judge to Confer with Children *in camera* in an *ex parte* fashion in chambers. (Doc. No. 16). At the hearing, the Court addressed the two motions. Respondent admitted that the factual allegations contained in the Verified Complaint were true and the Motion for Judgment on the Pleadings was accurate. Nevertheless, Respondent argued that the Hague Convention's age and maturity exception (contained in Article 13) applied and precludes the Children's removal from Texas. Considering the concession by the Respondent, the Court granted Petitioner's Motion for Judgment on the Pleadings in open court (Doc. No. 14) subject to a resolution of Respondent's argument concerning the age and maturity exception.[3] The Court also granted Respondent's Motion for Judge to Confer with Children *in camera* in chambers (Doc. No. 16). Since the Children were not present at the

---

[3] Since the two motions were filed so closely to the hearing, the Court gave both sides leave to file a response to the other's motion if they so desired.

hearing, however, the Court abated the hearing on the validity of the exception until the children were available.

Thus, the only issue for the Court to decide is whether the Hague Convention's Article 13 age and maturity exception applies.

## II. Legal Standard

The Hague Convention's overall goal is to "address the problem of international child abductions during domestic disputes." *Lozano v. Montoya Alvarez*, 572 U.S. 1, 4 (2014) (internal quotation marks omitted). The Hague Convention achieves its goal by "establish[ing] legal rights and procedures for the prompt return of children who have been wrongfully removed or retained." 22 U.S.C.A. § 9001. A wrongful removal is one that violates "rights of custody." *Abbott v. Abbott*, 560 U.S. 1, 9 (2010). The Hague Convention reasons that the best interest of the child is well served when decisions regarding custody rights are made in the country of habitual residence.

The Hague Convention's central goal is the return of the children. It provides that when children under the age of 16 have been wrongfully removed or retained, "the country to which the child has been brought must order the return of the child forthwith, unless certain exceptions apply." *Abbott*, 560 U.S. at 9 (internal quotation marks omitted). Among the exceptions is what has been referred to as the "age and maturity exception."

## III. Analysis

As stated above, the parties previously agreed that the facts as alleged in the Motion for Judgment on the Pleadings (Doc. No. 14) establish that Nares is currently violating the Mexico divorce decree and that under the Hague Convention this Court should order their return unless an exception exists. Respondent has argued that the Article 13 age and maturity exception applies. Respondent argues that the Children are old enough and sufficiently mature for the Court to

consider and weigh their objections to retuning to Mexico. Petitioner disagrees. This dispute led this Court to hold today's hearing at which it interviewed the Children.

As noted, the age and maturity exception is found in Article 13 of the Hague Convention. It states, "[t]he judicial or administrative authority may also refuse to order the return of the child if it finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views." Hague International Child Abduction Convention; 51 Fed. Reg.at 10494-01, Art. 13. The party opposing the child's return must establish the child's maturity by a preponderance of the evidence. *England v. England*, 234 F.3d 268, 272 (5th Cir. 2000). "[W]hether a child is of sufficient age and maturity is a fact-intensive process," and the Fifth Circuit has "declined to hold, as a matter of law, that any particular age is sufficient of insufficient to meet the defense." *Dietz v. Dietz*, 349 F. App'x 930, 934 (5th Cir. 2009). That said, the age and maturity exception is to be applied narrowly. *Id.*

In making its determination, a court must rely on live, oral testimony as well as the demeanor of the witness. *United States v. Santiago*, 410 F.3d 193, 197 (5th Cir.2005) (given the reliance on live oral testimony, "the clearly erroneous standard is particularly strong because the judge had the opportunity to observe the demeanor of the witness[es]"). Considering the fact that the Children are young (eleven and six years old), the Court, at the request of Respondent (and hearing no objection by the Petitioner), granted Respondent's Motion to Confer with Children *in camera* in chambers instead of subjecting them to a hearing in open court. (Doc. No. 16).

While the law applying Article 13 is not extensive, it is a provision that has arisen in a number of circuits. In some circuits, children as young as eight have been found to be of sufficient age and maturity to consider their objection. *See, e.g., Anderson v. Acree*, 250 F.Supp.2d 876, 883 (S.D.Ohio 2002). On the other hand, the Fifth Circuit has determined that individuals as old as

5

thirteen were not of sufficient age and maturity to consider their objection under the age and maturity exception. *See England*, 234 F.3d at 272 (the court determined that a 13 year old who stated that she maintained friendships with children in America and had a stable situation in America was not mature enough for the court to appropriately consider her views on where she would prefer to live under the Hague Convention); *see also Dietz v. Dietz*, 349 F. App'x 930, 934 (5th Cir. 2009) (the district court did not err in holding that a thirteen and nine year old were not mature as that was used under the Hague Convention).

The two Children here are eleven and six years old. Neither speaks English; consequently, the Court's interpreter translated. The girls were interviewed separately so the Court could evaluate them separately. During their respective interviews, both kept their eye cast downwards and spoke in a quiet manner. Both Children only spoke a couple of words at a time. For the most part, they were unable to explain their answers, often sticking to yes, no, I don't know or one word answers.[4] *Compare with Anderson*, 250 F.Supp.2d T 883 (court found the eight-year-old child was of sufficient age and maturity to consider her views because "[the child] was composed and did not appear to be unduly nervous or afraid. She calmly and readily answered the court's questions. She was able to point to New Zealand on a globe.... She appeared to understand the court's questions, and also indicated her understanding of the difference between truth and falsehood).

The case at hand shares similarities with *Dietz v. Dietz*. In the *Dietz* case, the court held a 13-year-old was not mature under the Hague Convention. *Dietz*, 349 F. App'x at 934. The court noted that he was "highly defensive, … he spoke in a short and cut manner in a low monotone and kept his eyes cast downward." *Id.* (internal citations omitted). *Id.* The court also pointed to the

---

[4] For example, the younger child could not identify the city, state, or country she currently lived in, nor could she identify where she previously lived. Additionally, when the Court asked the eleven-year-old what part of Texas she liked better than Mexico she answered "all."

6

report of a child psychologist who examined the boy and determine despite showing high average to superior intelligence, he displayed only average verbal skills, and performed poorly in school. *Id.* Also in that case, the Court did not credit 9-year-old Angus's preference because it found that his views were "unduly influenced by his father." *Id.*

The Court recognizes the familial, emotional, and social conflict the Children face. It also takes into account the unusual circumstances under which the questioning took place. It took place in the Court's jury room with several adults in attendance, including the judge, the court reporter, the interpreter, and members of the Court staff, but no one that the girls knew. The Court also acknowledges that both Children voiced a preference for remaining in Texas with their mother, but this testimony, even when one gives due consideration to the circumstances surrounding the questioning, is not sufficient to prove by a preponderance of the evidence that the Children are mature enough for the Court to appropriately take into account their views under the age and maturity exception. *Rodriguez v. Yanez*, 817 F.3d 466, 476 (5th Cir. 2016) (requiring an "[o]bject[tion] not a mere preference."). In so holding, this Court is not only considering their answers, but also their demeanor, their attention to what was being asked, and the manner of their responses. The totality of the evidence made it clear that neither girl demonstrated the age and maturity necessary for the Court to take their views into account.

Since the Court finds the Children are not of sufficient age and maturity, the Court **ORDERS** the two minor children—M.G.R.D. and V.N.R.D—be returned to Nuevo Leon, Mexico.

## IV. Conclusion

For the reasons mentioned above, the Court **ORDERS** the two minor children—M.G.R.D.

and V.N.R.D—be returned to Nuevo Leon, Mexico.

Signed at Houston, Texas, this ___15___ day of December, 2022.

Andrew S. Hanen
United States District Judge